The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MATT WRIGHT,

     Plaintiff,

v.

STATE OF WASHINGTON, *et al.*,

     Defendants.

NO. 23-cv-1326-BJR

**ORDER RE: REPORT AND RECOMMENDATION**

## I.   INTRODUCTION

Plaintiff Matthew Wright, an inmate at Monroe Correctional Complex, Twin Rivers Unit ("TRU"), brought this 42 U.S.C. § 1983 action through counsel against the State of Washington, the Washington State Department of Corrections ("DOC"), and ten DOC employees: Dr. Christine Gomes, Dr. Traci Drake, David Christensen, Carol Smith, Louise Stemler, Jason Martin, Jason Richer, Alex Costa, Risa Klemme, and Nikki Rymer (collectively, "Defendants"). Am. Compl., ECF No. 1-2. Wright alleges negligent mental health care, emotional distress, retaliation for the exercise of his First Amendment rights, and failure to accommodate his disability. *Id.* He also asserted a claim of respondeat superior against the State. *Id.*

ORDER RE: REPORT AND RECOMMENDATION

- 1

Currently before the Court is the Report and Recommendation ("R&R") of Magistrate Judge S. Kate Vaughan in which she recommends that the Court grant Defendants' motion for summary judgment, ECF No. 39, and deny Plaintiff's motion for partial summary judgment, ECF No. 41. R&R, ECF No. 51. Wright has filed objections and Defendants have filed a response to the objections. ECF Nos. 52, 53. Having reviewed all the materials,[1] the record of the case, and the relevant legal authority, the Court will overrule Plaintiff's objections and adopt the R&R. The reasoning for the Court's decision follows.

## II.    BACKGROUND

In her R&R, Magistrate Judge Vaughan provided a detailed factual background, which the Court adopts and incorporates herein.[2] *See* R&R 2-19. In brief summary, Wright has been incarcerated for the past twenty-one years in the Twin Rivers Unit ("TRU") at the Monroe Correctional Complex in Monroe, Washington. He suffers from learning disabilities and mental health issues, including post-traumatic stress disorder ("PTSD"). His interactions with mental health services at TRU resulted in multiple complaints, health service kites, grievances, and requests for accommodation. In a letter dated March 9, 2023, the Resolution Program Manager informed Wright that he had filed over 255 resolution requests at that time, which was one of the highest numbers of complaints filed by any incarcerated individual.  She warned him that abuse of the grievance and kite system may result in an infraction or suspension from use of the resolution program. Wright responded with disrespectful messages and additional kites. Ultimately, on March 21, 2023, Wright was suspended from the resolution program for a year. Wright then filed a

---

[1] Including the cross-motions, ECF Nos. 39, 41, the responses and replies, ECF Nos. 42, 45, 47, 49, together with the attached exhibits and declarations, as well as the objections to the R&R, ECF No. 52, and the responses to objections, ECF No. 53.
[2] The Court notes that Wright disagrees with some specific factual representations, which are discussed in detail below.

ORDER RE: REPORT AND RECOMMENDATION

- 2

complaint, through counsel in Snohomish County Superior Court, and the case was removed to this Court on August 25, 2023. Wright contends that his First Amendment rights were violated by retaliatory threats to transfer him to a facility further away from his children, he was not properly accommodated for his learning disabilities, and he received inadequate care for his mental health needs. He further contends that his post-filing transfer to Airway Heights prison is evidence of retaliation for his filing of this lawsuit. Objs. 3.

The parties filed cross-motions for summary judgment, in which Wright asked the Court to find Defendants Dr. Christine Gomes, Dr. Traci Drake, and Resolution Program Manager Carole Smith, liable for the retaliation claims he brought against them, and the Defendants requested dismissal of all claims. After Magistrate Judge Vaughan issued her R&R, Wright filed objections, asking this Court to overrule the R&R and allow this case to proceed to a jury trial.

### III.   LEGAL STANDARDS

#### A.    Standard of Review

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. *See* Fed. R. Civ. P. 72(b). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court reviews *de novo* those portions of the report and recommendation to which specific written objections are made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*); Fed. R. Civ. P. 72(b).

#### B.    Summary Judgment Standard

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact" and the movant is

ORDER RE: REPORT AND RECOMMENDATION

- 3

1   entitled to judgment as a matter of law. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017)

2   (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162

3   (9th Cir. 2016)); Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of identifying

4   portions of the record that demonstrate the absence of a fact or facts necessary for one or more

5   essential elements of each claim." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657

6   (9th Cir. 2020). "If the moving party meets this burden, the opposing party must then set out specific

7   facts showing a genuine issue for trial to defeat the motion." *Id.* If the evidence proffered by the

8   opposing party "is merely colorable, or is not significantly probative, summary judgment may be

9   granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

10      On cross-motions for summary judgment, the court must consider each motion separately

11   to determine whether either party has met its burden with the facts construed in the light most

12   favorable to the other. *See* Fed. R. Civ. P. 56; *see also Fair Housing Council v. Riverside Two*, 249

13   F.3d 1132, 1136 (9th Cir. 2001) (noting the court's responsibility to determine whether disputed

14   issues of material fact are present). The Court must "consider the appropriate evidentiary material

15   identified and submitted in support of both motions, and in opposition to both motions, before ruling

16   on each of them." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015); *see*

17   *also AGCS Marine Ins. Co. v. Expeditors Int'l Ocean, Inc.*, 470 F. Supp. 3d 1210, 1216 (W.D.

18   Wash. 2020).

19                              **IV.   DISCUSSION**

20      Wright generally contends that Magistrate Judge Vaughan did not follow the standards for

21   rulings on summary judgment by inappropriately resolving factual disputes, drawing inferences in

22   favor of the moving party, and by improperly weighing evidence. Objs.8. Objections must be

24   ORDER RE: REPORT AND RECOMMENDATION

25   - 4

specific, and the Court is not obligated to review general objections. *See, e.g.*, *Seebach v. Washington State Dep't of Corr.*, No. 3:23-CV-5219, 2024 WL 3091755, at *1 (W.D. Wash. June 21, 2024) ("[A] general objection has the same effect as no objection at all, since it does not focus the Court's attention on any specific issue for review." (quoting *Brandon v. Dep't of Corr.*, C21-5417-JCC, 2021 WL 5937685, at *1 (W.D. Wash. Dec. 16, 2021)); *Jeannie M. v. O'Malley*, No. 2:22-CV-00116-RHW, 2024 WL 1377305, at *2 (E.D. Wash. Mar. 30, 2024) ("[G]eneral objections to an R & R are tantamount to no objection at all." (citation omitted)). Although Wright's objection is vague in nature, the Court considers it in the context of the specific objections.[3] Wright lists eleven reasons why this Court should reject the Magistrate's R&R, deny Defendants' summary judgment motion, and enter judgment for Wright on his claims against Dr. Gomes, Dr. Drake, and Ms. Smith. *Id.* at 4-7. The Court shall address Wright's objections in the context of his claims.

### A.    Retaliation Claims

Wright's motion for partial summary judgment seeks a finding of liability on his claims of retaliation against the individual defendants. Wright argues that Defendants' actions, including attempting to transfer him, withdrawing his mental health services, and suspending his access to the Resolution Program, constitute First Amendment retaliation. The Defendants raise the affirmative defense of qualified immunity and seek summary judgment dismissing Wright's retaliation claims against all Defendants. In his objections to the R&R, Wright does not argue that qualified immunity does not apply,[4] but he contends that Magistrate Judge Vaughan assumed facts

---

[3] The Court notes that it finds no error in the summary judgment standard applied by the Magistrate.

[4] The Court notes that Wright did argue in his response to Defendants' summary judgment motion that "the doctrine of qualified immunity for the actions of prison staff [was rendered] a nullity," and he sought to preserve for appeal his right to contest the application of the doctrine. Pl's Resp. 12, ECF No. 42. He also argued that Defendants were not entitled to qualified immunity because their conduct violated a clearly established constitutional right. *Id.*

ORDER RE: REPORT AND RECOMMENDATION

- 5

1    in favor of Defendants when applying the principles of qualified immunity. Objs. 10. Defendants

2    respond that Wright mischaracterizes the record in his efforts to create factual issues that either

3    don't exist or are not material. Resp. 1-2.

4         Qualified immunity is "an affirmative defense that must be pleaded by a defendant official."

5    *Harlow v. Fitzgerald,* 457 U.S. 800, 815 (1982) (*citing Gomez v. Toledo,* 446 U.S. 635 (1980)). A

6    public official performing a discretionary function enjoys qualified immunity in a civil action for

7    damages, provided his or her conduct does not violate clearly established federal statutory or

8    constitutional rights of which a reasonable person would have known. *Id.* at 818; *see also Anderson*

9    *v. Creighton,* 483 U.S. 635, 638 (1987) ("[W]hether an official protected by qualified immunity

10   may be held personally liable for an allegedly unlawful official action generally turns on the

11   'objective legal reasonableness' of the action assessed in light of the legal rules that were 'clearly

12   established' at the time it was taken") (*quoting Harlow,* 457 U.S. at 818, 819); *Sorrels v. McKee,*

13   290 F.3d 965, 969 (9th Cir. 2002). Thus, qualified immunity "'provides ample protection to all but

14   the plainly incompetent or those who knowingly violate the law.'" *Burns v. Reed,* 500 U.S. 478,

15   495 (1991) (*quoting Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

16        The Supreme Court has established a two-part test for determining whether an official is

17   entitled to qualified immunity. The Court must determine whether the facts, taken in the light most

18   favorable to plaintiff, demonstrate that defendant's conduct violated a federal statutory or

19   constitutional right, and whether that right was "clearly established" at the time of the alleged

20   violation. *Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan,* 555

21   U.S. 223 (2009) (explaining "that, while the sequence set forth [in *Saucier*] is often appropriate, it

22   should no longer be regarded as mandatory"). "If the right was not clearly established at the time

23

24   ORDER RE: REPORT AND RECOMMENDATION

25     - 6

of the violation, the official is entitled to qualified immunity." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011) (citation omitted).

For a law to be "clearly established," it must be sufficiently clear that a reasonable official would understand that his or her action violates that right. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "The plaintiff bears the burden to show that the contours of the right were clearly established." *Clairmont*, 632 F.3d at 1109. And, under either prong of the test, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

"[A] successful retaliation claim requires a finding that 'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals.'" *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (quoting *Rizzo v. Dawson*, 778 F.3d 527, 532 (9th Cir. 1985)). The prisoner plaintiff "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Id.* The Ninth Circuit has also directed courts to "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.* at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).

Wright asserts that his declaration in support of his own summary judgment motion is sufficient to satisfy the elements of a First Amendment retaliation claim and to raise factual disputes for a jury to resolve. *See, e.g.*, Objs. 8-11. He also asserts that his declaration went unchallenged so his statements should have been treated as established facts. *Id.* at 9. But the record contained evidence presented by Defendants of Wright's mental health records, deposition transcript excerpts, documents produced in discovery, as well as Wright's declaration and submitted exhibits. The Magistrate appropriately considered and cited the evidence and arguments from both parties.

ORDER RE: REPORT AND RECOMMENDATION

- 7

1    Drawing all reasonable inferences in Wright's favor, Magistrate Judge Vaughan determined that

2    none of Defendants' conduct violated a clearly established statutory or constitutional right. R&R

3    26-29.[5]

4            It has long been established that a judge is not "required to submit a question to a jury merely

5    because some evidence has been introduced by the party having the burden of proof, unless the

6    evidence be of such a character that it would warrant the jury in finding a verdict in favor of that

7    party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (quoting *Improvement Co. v.*

8    *Munson*, 14 Wall. 442, 448 (1872)). Based on the Court's review of the evidence in the record, it

9    finds no inappropriate inferences drawn by the Magistrate nor misapplication of the summary

10   judgment standard, nor does it find any genuine dispute of material facts that would preclude

11   summary judgment for the individual defendants on the basis of qualified immunity.

12           Wright also contends that the Magistrate erred by not applying the *Turner* test in deciding

13   that Defendants were justified in their actions despite the chilling effect on First Amendment rights.

14   Objs. 12. In *Turner v. Safley*, 482 U.S. 78 (1987), to ensure that the judgment of prison officials

15   was accorded appropriate deference, the Court adopted a reasonableness test by which to determine

16   the validity of prison regulations that are alleged to violate a prisoner's constitutional rights. The

17   test requires the Court to balance four factors in determining whether a prison regulation is

18   reasonably related to legitimate penological interests. *Id.* However, the *Turner* analysis is applied

19   when a prison rule or regulation is challenged and is not applicable in cases, such as this, where

20   there is no regulation challenged. *See Prison Legal News v. Ryan*, 39 F.4th 1121, 1129 (9th Cir.

21   2022) ("When a plaintiff presents such a facial challenge to a prison regulation, we evaluate it using

22

_____

23   [5] The Court notes that Wright has not objected to the Magistrate's decision to deny his motion to strike some of
      Defendants' evidence.

24   ORDER RE: REPORT AND RECOMMENDATION

25    - 8

the *Turner* framework."). Rather, the Magistrate properly considered the five basic elements of First Amendment retaliation as set forth in *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). *See* R&R 26.

Accordingly, Wright's objections and repeated arguments regarding qualified immunity related to his retaliation claim are overruled.

### B.    Negligence Claims

Wright asserted that Defendants breached their duty of care to him by failing to provide the medical care his mental condition warranted. Wright contends that the Magistrate erred by requiring him to produce an expert to prove his negligence claims. Objs. 7, 17. He argues that an expert is required only when a party is challenging an action that requires medical judgment. *Id.* Wright asserts that he is not challenging the medical or mental health judgments related to his care, "just the cavalier and negligent manner in which defendants provided it." *Id.* at 17. Wright cites no authority to support his assertion that he does not need to establish a standard of care through an expert.

"Under Washington law, a negligence action requires proof of four elements: existence of a duty; breach of the duty; a resulting injury; and proximate causation between the breach and the resulting injury." *Cox v. Dep't of Soc. & Health Servs.*, 913 F.3d 831, 839 (9th Cir. 2019) (citing *Michaels v. CH2M Hill, Inc.*, 171 Wn.2d 587 (2011)). To establish a breach of duty, a standard of care must be defined. *See, e.g.*, *Pedroza v. Bryant*, 101 Wn. 2d 226, 233 (1984) (adopting the doctrine of corporate negligence, the court turned to the task of defining the standard of care); *Keller v. City of Spokane*, 146 Wn. 2d 237, 243 (2002) ("In a negligence action, in determining whether a duty is owed to the plaintiff, a court must decide not only who owes the duty, but also to whom the

ORDER RE: REPORT AND RECOMMENDATION

1  duty is owed, and what is the nature of the duty owed. The answer to the second question defines

2  the class protected by the duty and the answer to the third question defines the standard of care."

3  (citations omitted)).

4      Some negligence claims against prison officials may not require expert testimony to define

5  the standard of care, as Wright suggests, but "[e]xpert testimony is required when an essential

6  element in the case is best established by an opinion that is beyond the expertise of a layperson."

7  *Seybold v. Neu*, 105 Wn. App. 666, 676 (2001). In *Gordon v. Kitsap Cnty.*, 187 Wn. App. 1023

8  (2015), an unpublished opinion, the court considered whether expert testimony was necessary to

9  establish what constitutes "reasonable care" in the context of an inmates' constitutional rights. The

10  court held that "[i]n light of the complex considerations inherent in the management of a

11  correctional facility," expert testimony was necessary. *Id.* at *3. Courts in other jurisdictions have

12  also required expert witness testimony to establish the standard of care in a prison context. *See, e.g.*,

13  *District of Columbia v. Carm*ichael, 577 A.2d 312, 314 (D.C.1990) ("The question of whether

14  prison officials acted reasonably to secure the safety of an inmate is not one within the realm of the

15  everyday experiences of a lay person. The reasonably prudent juror cannot be expected to appreciate

16  the ramifications of prison security as well as the parallel considerations involving the safekeeping

17  of prisoners, and therefore, whether, under given circumstances, reasonable care was exercised . . .

18  . Thus, expert testimony or supporting evidence is necessary to establish that standard.") (quoting

19  *Hughes v. Dist. of Columbia*, 425 A.2d 1299, 1303 (D.C.1981)); *Naki v. Hawaii*, No. CV-13-02189-

20  PHX-JAT, 2015 WL 5954823, at *4 (D. Ariz. Oct. 14, 2015) (concluding in a prisoner negligence

21  case that the plaintiff must proffer expert testimony to establish the standard of care); *Villalobos v.*

22  *Bd. of County Comm'rs*, 322 P.3d 439, 442 (N.M. Ct. App. 2014) (holding that expert testimony

23  was required to assist the jury in rendering a decision on the standard of care imposed on prison

24  ORDER RE: REPORT AND RECOMMENDATION

25  - 10

officials monitoring inmates); *Hall v. Kirkegard*, No. CV1400011HDLCJTJ, 2017 WL 8787176, at *14 (D. Mont. July 31, 2017), *report and recommendation adopted*, No. CV 14-11-H-DLC-JTJ, 2018 WL 747375 (D. Mont. Feb. 7, 2018), *aff'd*, 806 F. App'x 601 (9th Cir. 2020) (collecting cases of courts finding that expert testimony is required to prove negligence claims against correctional facilities/officials in failure to protect negligence cases).

Under the circumstances present here, Wright has not provided expert testimony, but more importantly, he failed to present any evidence establishing the applicable standard of care that he alleges Defendants have breached. Therefore, he failed to raise any genuine issue of material fact that the Defendants treated him negligently.

Accordingly, Wright's objections related to his negligence claims are overruled.

### C.    ADA Claim

Wright claims that Defendants were deliberately indifferent by failing to provide him with a reasonable accommodation related to his reading disability. Wright states that there are material issues of fact as to whether Defendants violated the ADA by failing to accommodate his disabilities. Objs. 18. He indicates that there is no dispute regarding his mental disability, or that he requested and was granted an accommodation by the Care Review Committee, but he contends that the staff at the Monroe facility refused to give him the assistance he was granted. *Id.* at 7, 18. Wright also contends that the Magistrate erroneously found that he was provided with a book that was appropriate to his reading level. *Id.* at 6-7.

As evidence that the Magistrate erred in her finding that Wright was not given an accommodation that Defendants failed to implement, Wright cites to his supplemental declaration, Exhibit C, docketed at ECF No. 43-4. *See* Objs. 7, Reason Number 11 (misciting the Exhibit as 43-

ORDER RE: REPORT AND RECOMMENDATION

- 11

5). He describes the exhibit as follows: "On March 3, 2023, the Health Services Appeals Committee wrote: 'we disagree with the Accommodation Review Committee and we authorize an access assistant to assist in reading documents.'" *Id.* Wright misrepresents the meaning of this exhibit. The exhibit documents the decision of the Appeals Committee to grant Wright's own appeal of the initial denial of his request for an access assistant. Wright Suppl. Decl., Ex. C, ECF No. 43-4. If read in its entirety, it states: "Individual has appealed denial of his request for an access assistant or therapy aid for his diagnosed 6th grade reading disability. The appeals committee disagrees with the denial of the access assistant and [Wright] is granted the accommodation for an access assistant to assist in reading documents." *Id.* And Wright's Exhibit D confirms that after the Access Care Assistant for document reading was approved, assistants were made available, and the access was communicated to him in writing. Wright Suppl. Decl. Ex. D, EF No. 43-5. Therefore, Wright's own exhibits support the Magistrate's finding.

As evidence that the Magistrate erred in finding that he was given a book appropriate for his reading level, Wright points to Exhibit 9 to his declaration in support of his summary judgment motion. *See* Objs. 6, Reason Number 8. In Wright's cited declaration, he references Exhibit 9 as a copy of his grievance #21730271, which he filed on May 5, 2021, grieving Dr. Gomes for retaliation. Wright Decl. ¶ 31, ECF No. 41-1. The exhibit grievance includes references to Wright being tested for his reading level, with a finding that the book that had been provided was at a higher level than appropriate. Ex. 9, ECF No. 41-10. The response notes also included a resolution, stating that a book on tape had been requested as an alternative while steps were being taken to address the workbook. *Id.* The Magistrate considered other evidence that indicated Wright did not have difficulty reading the workbooks he had been given, but even accepting it as true, it was not sufficient to create a viable ADA claim since the workbooks were only one part of his overall

ORDER RE: REPORT AND RECOMMENDATION

mental health treatment plan designed to help him develop skills for dealing with his PTSD symptoms in between therapy sessions with qualified mental health providers. R&R 31-32.

Accordingly, Wright's objections related to his ADA claim are overruled.

## V.  CONCLUSION

For the foregoing reasons:

1.  The Court overrules Plaintiff's Objections to Report and Recommendation, ECF No. 52.

2.  The Court ADOPTS the Report and Recommendation.

    a.  Defendants' Motion for Summary Judgment, ECF No. 39, is GRANTED; and

    b.  Plaintiff's Motion for Partial Summary Judgment, ECF No. 41, is DENIED.

3.  This case is DISMISSED with prejudice.

4.  The Clerk is directed to send copies of this Order to the parties and to Judge Vaughan.

DATED this 27th day of May 2025.

Barbara Jacobs Rothstein
United States District Judge

ORDER RE: REPORT AND RECOMMENDATION

- 13